IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALEJANDRO RANGEL GONZALEZ,

    Petitioner,               No. CIV S-05-1954 LKK GGH P

    vs.

DAVID L. RUNNELS, Warden,

    Respondent.          FINDINGS AND RECOMMENDATIONS

_____/

Background

    Petitioner, proceeding with appointed counsel, has filed a petition pursuant to 28 U.S.C. §2254. Petitioner challenges his April 3, 2001, San Joaquin County jury trial conviction for three counts of attempted murder (with weapon enhancements found true); two counts of shooting at an occupied motor vehicle, for which he was sentenced to a term of 35 years, 4 months. First Amended Petition (FAP), filed on March 6, 2006, pp. 1-3. Petitioner raises the following grounds for relief: 1) ineffective assistance of trial counsel for failing to present a defense and for his advice to petitioner that the offered 16-year plea bargain should be rejected; 2) right to due process violated by trial court's refusal to instruct on petitioner's theory of defense that firearm discharge was grossly negligent, not intentional; 3) due process violation due to

\\\\\

1

insufficient evidence to support the three attempted murder counts.[1]  FAP, pp. 6-18.

At a July 20, 2006, hearing on respondent's June 5, 2006, motion to dismiss the first amended petition as barred by the AEDPA one-year statute of limitations, petitioner sought an evidentiary hearing to demonstrate a basis for equitable tolling, in light of Mendoza v. Carey, 449 F.3d 1065 (9th Cir. 2006), wherein the Ninth Circuit found that a non-English speaking petitioner's alleged lack of access to Spanish language materials or translation assistance during the limitations period could entitle the petitioner to equitable tolling.  See Order, filed on July 26, 2006.  The court directed petitioner's counsel to file an English translation of petitioner's declaration in Spanish (maintaining the original) and with 60 days to file a stipulated motion to expand the record by declaration and any other documents or, if not by way of stipulation, to file a motion on behalf of petitioner, informing the court of the basis for any need beyond expanding the record for an evidentiary hearing.  Id.  Petitioner's October 20, 2006, unopposed motion for an evidentiary hearing came on for hearing on December 14, 2006; the motion was unopposed and was granted at the hearing, along with petitioner's motion to expand the record with petitioner's declaration in the original and in the English version.  See Order, filed on December 20, 2006.  The evidentiary hearing was scheduled for February 26, 2007, before the undersigned.  Id.  The court permitted the evidentiary hearing to be twice re-scheduled.  See Orders, filed on February 7, 2007, and on June 24, 2007.  The evidentiary hearing ultimately commenced on November 19, 2007.  Following the hearing, the court directed the parties to file further briefing on a specific issue (see, infra), which petitioner filed on November 28, 2007, and respondent filed on November 29, 2007.

In the court's July 26, 2006, Order, pp. 1-2, the following was previously stated:

> Respondent sets forth that the applicable statute of limitations (28 U.S.C. § 22449d)(1)(A)) was tolled from September 9, 2003 (the date the judgment of conviction became final, petitioner having filed his first California Supreme Court, if anything, prematurely,

---

[1] Claims 4, 5 and 6 of the original petition have been abandoned.  FAP, p. 19.

on July 16, 2004) until April 14, 2004 (when the petition was denied). Although, according to respondent, there was no tolling between that time, April 14, 2004, until petitioner embarked on a second round of state habeas corpus petitions, on May 6, 2004, when petitioner filed another habeas petition, this time in the superior court, respondent concedes that tolling is applicable not only until May 21, 2004, when the petition was denied, but also for the period from May 21, 2004, to June 7, 2004, when the state court of appeal habeas petition was filed and until July 8, 2004, when that petition was denied. However, respondent contends that petitioner was not entitled to tolling from the time of the state court of appeal denial (July 8, 2004) until the August 16, 2004, filing of his second petition in the state supreme court. Nor, respondent argues, was petitioner entitled to tolling for the period of time from the August 16, 2004 filing until July 13, 2005, when the second state supreme court petition was denied (with citation to In re: Clark, 5 Cal. 4th 750 (1993)). If respondent is correct, then petitioner's federal habeas petition, filed on August 12, 2005,[2] was untimely.

In opposition to respondent's motion, petitioner's counsel sought an evidentiary hearing to demonstrate a basis for equitable tolling, in light of Mendoza v. Carey, 449 F.3d 1065 (9th Cir. 2006), a relatively recent case in which the Ninth Circuit found that a non-English speaking petitioner's alleged lack of access to Spanish language materials or translation assistance during the limitations period could entitle the petitioner to equitable tolling.

Following oral argument, petitioner's counsel was directed to file an English translation of petitioner's declaration in Spanish (while maintaining the signed original) with respect to the impediments to timely filing that he faced with regard to the lack of access to assistance from bilingual inmates or others during the relevant period.

In addition, the court directed the parties to coordinate their efforts with respect to providing a factual basis demonstrating petitioner's access, or lack thereof, to translation assistance for timely filing. Petitioner was directed within 60 days of the date of the hearing to file a stipulated motion to expand the record by declaration and any other documents, or, if not by

---

[2] Although not noted by petitioner, application of the mailbox rule would appear to require the court to recognize the original petition as having been filed on August 3, 2005. However, if respondent's argument prevails, an additional nine or ten days taken off the filing date would not be particularly significant.

stipulation, to file such a motion on behalf of petitioner alone, and to inform the court of any need beyond an expansion of the record for any witness and an evidentiary hearing and the basis therefore.

Motion to Dismiss

The statute of limitations for federal habeas corpus petitions is set forth in 28 U.S.C. § 2244(d)(1):

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Under 28 U.S.C. § 2244(d)(2):

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In evaluating the timeliness of the instant petition, the court has afforded petitioner the maximum latitude by applying the mailbox rule[3] throughout. On direct appeal,

---

[3] Houston v. Lack, 487 U.S. 266, 275-76, 108 S. Ct. 2379, 2385 (1988); Koch v. Ricketts, 68 F.3d 1191 (9th Cir. 1995); see also, Huizar v. Carey, 273 F.3d 1220, 1223 (9th Cir. 2001) ("A prisoner who delivers a document to prison authorities gets the benefit of the prison mailbox rule, so long as he diligently follows up once he has failed to receive a disposition from the court

1  petitioner's petition for review was denied on June 11, 2003. Respondent's Lodged Document
2  (hereafter, Lodg. Doc.) 9. Petitioner's conviction became final on September 9, 2003, ninety
3  (90) days after the state supreme court denied his petition for review. <u>Bowen v. Roe</u>, 188 F.3d
4  1157, 1158-59 (9th Cir. 1999) ("holding] that the period of 'direct review' in 28 U.S.C. §
5  2244(d)(1)(A) includes the [ninety-day] period within which a petitioner can file a petition for a
6  writ of certiorari with the United States Supreme Court, whether or not the petitioner actually
7  files such a petition."). Petitioner, however, filed a habeas petition in the state supreme court
8  before that date, on July 16, 2003, which was denied on April 14, 2004. Lodg. Docs. 10 & 11.
9  The statute was therefore tolled for 224 days, until April 14, 2004.

10         Petitioner then commenced a new round of habeas petitions in the state superior
11  court on April 28, 2004, which was denied on May 21, 2004. Lodg. Docs. 12 & 13. While
12  petitioner is not entitled to statutory tolling for the fourteen (14) days from April 14, 2004, when
13  his initial state supreme court petition was denied, until April 28, 2004, when he filed his
14  superior court habeas petition, he is entitled to tolling for the time that petition was pending, that
15  is, until May 21, 2004. <u>Nino v. Galaza</u>, 183 F.3d 1003, 1006 (9th Cir. 1999) (the statute of
16  limitations is tolled under 28 U.S.C. § 2254(d)(2) during the time properly filed state post-
17  conviction proceedings are pending, and that tolling applies from the time the first state habeas
18  petition is filed until the California Supreme Court rejects the petitioner's final collateral
19  challenge).

20         Thus, at the point at which petitioner filed his habeas petition in the state court of
21  appeals, on June 1, 2004, only fourteen days had run and petitioner had 351 days left to run on
22  the AEDPA statute. Lodg. Doc. 14. As to petitioner's subsequent petition to the state court of
23  appeals, petitioner is entitled to tolling for the entire period from the April 28, 2004, habeas filing
24  in the state superior court, resulting in a reasoned decision, through the July 8, 2004, silent denial
25  _____
26  after a reasonable period of time.")

of the state appellate court.  Lodg. Doc. 15.

Petitioner is not, however, entitled to tolling either from the July 8, 2004, denial of the state appellate court habeas petition to the filing on August 9, 2004, of the second state supreme court habeas petition or from the period of time that that petition was pending, as the July 13, 2005, state supreme court denial (Lodg. Docs. 16 & 17), cited In re: Clark, 5 Cal.4th 750 [21 Cal. Rptr.2d 509] (1993), as that petition was not a "properly filed" application so as to provide tolling within the provisions of 28 U.S.C. § 2244(d)(2).  Pace v. DiGuglielmo, 544 U.S. 408, 414, 125 S. Ct. 1807, 1812 (2005) ("[w]hen a postconviction petition is untimely under state law, 'that [is] the end of the matter" for purposes of § 2244(d)(2).")  Petitioner makes the argument that the state supreme court's citation to In re Clark, supra, without comment or a specific page citation, makes it "impossible to determine if that court found the petition untimely or denied it as a successive petition."  Opposition (Opp.), pp. 2.  Respondent argues that whether the state's high court intended the In re Clark citation to signify either that the petition was untimely or successive, the result is the same.  Reply, p. 3.  As the state supreme court made clear in In re: Clark, 5 Cal.4th at 770, 21 Cal. Rptr.2d 509): "a successive petition presenting additional claims that could have been presented in an earlier attack on the judgment is, of necessity, a delayed petition."  Under Pace, the Supreme Court held "that time limits, no matter their form, are 'filing' conditions," and that a state court's rejection of a habeas petition as untimely, signifies that it was not "'properly filed,'" and petitioner therefore "is not entitled to statutory tolling under § 2244(d)(2)."  544 U.S. at 417, 125 S. Ct. at 1814.

Petitioner, however, seeks to transmute the statutory timeliness issue into an argument that somehow petitioner is being charged with a procedural default that is defectively grounded.  Petitioner, assuming the In re Clark citation to be a denial on the basis of the petition being successive, argues that a denial on that specific basis would not constitute a ground that was firmly established and regularly followed by state courts at that time (that is, when petitioner's application was denied). Opp., p. 4, citing Lee v. Kemna, 534 U.S. 362, 389, 122 S.

6

Ct. 877 (2002) (citing to dissenting opinion for the principle that state procedures must be firmly established and regularly followed to constitute an adequate state ground to bar federal review); Hill v. Roe, 321 F.3d 787, 790 (9th Cir. 2003). However, under Pace, whether the state supreme court meant to indicate that the petition was untimely or successive would be essentially a distinction without a difference in the context of statutory untimeliness under AEDPA. Moreover, whatever procedural hurdles the state must jump when asserting procedural default, no such hurdles have been imposed in the Pace context of refusing to find a state petition timely for federal statutory tolling purposes.

The period of time from July 8, 2004, through July 13, 2005, amounts to 370 days. Subsequently, petitioner's application in this court was filed on August 3, 2005, after an additional 21 days; thus, 391 days elapsed before petitioner filed the instant petition, for which petitioner was only entitled to 351 days of tolling; thus, this petition was filed 40 days beyond the AEDPA statute.

As noted, the second California Supreme Court habeas petition was denied on July 13, 2005. However, the statute had run, minus tolling, a short time earlier, as of June 24, 2005. Therefore, petitioner must show that "extraordinary circumstances" inhibited him just prior to and around that precise time period up to August 3, 2005, the date on which his petition was filed here.

Thus, petitioner's argument for timeliness rests solely on petitioner's claims of entitlement to equitable tolling. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace, supra, at 418, 125 S. Ct. at 1814; Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002) (a habeas petitioner bears the burden of proving that equitable tolling should apply to avoid dismissal of an untimely petition). "Equitable tolling is unavailable in most cases," and is only appropriate "if *extraordinary* circumstances beyond a prisoner's control make it impossible to file a petition on time." Miranda, supra, at 1066

7

(internal quotations/citations omitted [emphasis added in Miranda]).  A petitioner must reach a "very high" threshold "to trigger equitable tolling [under AEDPA]...lest the exceptions swallow the rule." Id.

In Calderon v. U.S. District Court (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled on other grounds, Calderon v. U.S. District Court for Cent. Dist. of CA. (Kelly), 163 F.3d 530 (9th Cir. 1998) (en banc), itself abrogated by Woodford v. Garceau, 538 U.S.202, 123 S. Ct. 1398 (2003), the Ninth Circuit found that the statute of limitations could be equitably tolled if extraordinary circumstances beyond a prisoner's control made it impossible to file the petition on time.  "In addition, '[w]hen external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling may be appropriate.'" Lott v. Mueller, 304 F.3d 918, 922 (9th Cir. 2002), quoting Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999).

Equitable tolling will not be available in most cases because tolling should only be granted if extraordinary circumstances beyond a prisoner's control make it impossible for him to file a petition on time. Beeler, 128 F.3d at 1288-89.  As held in Beeler, "[w]e have no doubt that district judges will take seriously Congress's desire to accelerate the federal habeas process, and will only authorize extensions when this high hurdle is surmounted." 128 F.3d at 1289. "Mere excusable neglect" is insufficient as an extraordinary circumstance. Miller v. New Jersey Dept. of Corrections, 145 F.3d 616, 619 (3rd Cir. 1998).  Moreover, ignorance of the law does not constitute such extraordinary circumstances. See Hughes v. Idaho State Bd. of Corrections, 800 F.2d 905, 909 (9th Cir. 1986).

In the Calderon (Beeler) case, the Court of Appeals held that the district court properly found equitable tolling to allow Beeler more time to file his petition.  Beeler's lead counsel withdrew after accepting employment in another state, and much of the work he left behind was not usable by replacement counsel – a turn of events over which the court found Beeler had no control.  The Court of Appeals held that the district court properly found these

were "extraordinary circumstances" sufficient to toll the statute of limitations.[4] The Ninth Circuit also found extraordinary circumstances in Calderon v. U.S. Dist. Ct. (Kelly), supra, 163 F.3d 530. The three reasons given which independently justified tolling were: a district court stay which prevented petitioner's counsel from filing a habeas petition, mental incompetency until a reasonable time after the court makes a competency determination, and the fact that petitioner did at one time have timely habeas proceedings pending which were mistakenly dismissed, not as a result of any doing by petitioner. Id. at 541-42. See also Corjasso v. Ayers, 278 F.3d 874 (9th Cir. 2002) (clerk's unjustified rejection of a petition justified partial tolling); Miles v. Prunty, 187 F.3d at 1107 (delay by prison in withdrawing funds from prisoner's trust account, preparing and mailing filing fee were circumstances beyond his control, qualifying him for equitable tolling).

Conversely, in U.S. v. Van Poyck, 980 F. Supp. 1108, 1110-11(C.D. Cal. 1997), the court found that a petitioner's circumstances were not extraordinary in the following circumstances: inability to obtain transcripts from court reporters, and general prison lockdowns preventing the prisoner's access to the library and a typewriter which were necessary to his motion. See also Tacho v. Martinez, 862 F.2d 1376, 1381 (9th Cir. 1988) (reliance on incompetence of jailhouse lawyer not sufficient to justify cause to excuse procedural default); Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999) (prisoner's unfamiliarity of law did not toll statute); Eisermann v. Penarosa, 33 F.Supp.2d 1269, 1273 (D.Haw. 1999) (lack of legal expertise does not qualify prisoner for equitable tolling); Henderson v. Johnson, 1 F.Supp.2d 650, 656 (N.D. Tex. 1998) (same); Fadayiro v. United States, 30 F.Supp.2d 772, 779-80 (D.N.J. 1998) (delay in receipt of transcripts does not justify equitable tolling).

\\\\\

---

[4] See also Baskin v. United States, 998 F. Supp. 188 (D. Conn. 1998), wherein the court applied equitable tolling where petitioner's attorney failed to notify him of the denial of a petition for certiorari until thirteen months after the denial was entered.

As noted, the Ninth Circuit has found that a non-English speaking petitioner's alleged lack of access to Spanish language materials or translation assistance during the limitations period could entitle the petitioner to equitable tolling. Mendoza v. Carey, supra, 449 F.3d 1065.

Evidentiary Hearing

At the hearing, Irene Reyes testified that she had been employed from August 23, 2004 to September, 2006, at the HDSP B-Facility library and was the only library employee qualified as bilingual (English/Spanish) during that period. She testified that she did not have time to translate legal documents, just to answer quick questions, that the library was usually full and that part of her job was to supervise inmates and to monitor the library users. Ms. Reyes did not recall seeing legal books/references written in Spanish. She also testified on direct that there were three inmate clerks who worked in the library, one of whom, Renato Obando, spoke Spanish. On cross-examination, Ms. Reyes testified that the three clerks were not always in the library but that Obando could provide language assistance. On re-direct, Ms. Reyes made clear that her other duties, such as preparing the ducat list, compelled her to close the library by 2:30 p.m., where she worked from Tuesday to Saturday.

During her testimony, it was made clear that in order to obtain P.L.U.[5] (Preferred Legal User) status, an inmate would have to show proof of a court deadline within thirty days. Lockdowns inhibited use of the library. When there was no lockdown, an inmate could give up yard time and [be ducated to] the library on "open line."

Petitioner was provided an interpreter at the hearing. The court accepted petitioner's declaration as direct testimony. Petitioner testified that he had had five years of school in Mexico and did not attend school in the U.S. He had no instruction in English in the county jail, but had some five to seven months of such instruction at HDSP. He testified that he

---

[5] The court has also elsewhere seen this acronym applied to the term "Priority Library User."

cannot read or write in English, but that he does not have difficulty reading or writing in Spanish. Petitioner testified that correctional officers often did not allow library access, that he was often on lockdown, that he never filled out paperwork to show that he was subject to a specific court deadline. Other people helped him fill out paperwork. Using a dictionary and the help of others, he copied what someone else had done. Exhs. A, B & C.[6] When he went to the library, he was trying to meet people who could help him. Inmate Renato Obando was the only person who spoke Spanish to help him. He had to borrow $150.00 from his sister to pay for Obando's help.

On cross-examination, petitioner confirmed that there was a lockdown in 2004, that he thought covered a three to four-month period. Exh. E, p. 2, on the log showed that on April 27, 2004, petitioner went to the library. Respondent's Exhibits F, G & H showed three different filings in state court during the period. Exh. F shows petitioner's signature on his state superior court habeas petition as dated April 28, 2004; Exh. G shows the petition to the state appellate court as signed and dated June 1, 2004. (It was stipulated as filed on June 7, 2004, but this court has given petitioner the benefit of the mailbox rule, see discussion, infra). Exh. H, the second state supreme court habeas petition, is file-stamped August 16, 2004, and the parties stipulated to its having been signed on August 9, 2004. Petitioner averred that he signed his petitions but neither wrote nor understood what was written in the petitions, relying entirely on Renato Obando.

In a self-translated declaration under penalty of perjury stipulated for admission at the hearing, Blanca Rangel, petitioner's sister, confirmed petitioner's lack of formal education (beyond the third or fourth grade in Mexico); she stated therein that she was petitioner's only family in the U.S., that she is fluent in both English and Spanish, that she lives in Texas, is a financially struggling single mother of two who earns $8.00 an hour for cleaning houses and that she sent petitioner two money orders in 2005, one for $150.00 and one for $50, although she

---

[6] All exhibits were submitted as respondent's exhibits. Exhs. A, B & C are inmate request forms wherein petitioner, in English, appears to have filed requests for library access.

1  cannot now locate the receipts.  See docket entry # 44.

2  Respondent's witness, Denette Jackson, HDSP Correctional Counselor II, had
3  been Litigation Coordinator since September, 1998.  She testified that to obtain library access,
4  when not on lockdown, an inmate submits a request form, and a certain number of inmates are
5  ducated each day to the library.  For open line, library hours are posted while inmates are on the
6  yard.  On lockdown, inmates can be ducated to the library and escorted by correctional officers.
7  If PLU inmates do not fill the library, then others can go.   Respondent's Exh. L shows a list of
8  employees who worked in Facility B with bilingual skills.[7]  Respondent's Exhs. A, B and C
9  showed that petitioner was ducated for PLU status on 8/10/04 (stipulated).  As to these requests
10 for library access written in English, as noted, petitioner averred that he had his dictionary to help
11 write them and copied what others had written.  The court found it was undisputed that there
12 were people who spoke Spanish in the library.

13 The undersigned does not reject petitioner's representations and evidence showing
14 that petitioner has, if any, a very limited capacity to read or write English, that he had no
15 education at all in the U.S. prior to what he has received post-incarceration, or that he had to wait
16 to receive money from his sister in order to pay another inmate to draft or send his petitions.
17 The undersigned accepts that petitioner did not understand AEDPA and did not fully understand
18 how to obtain PLU status, and that he was subject to some lockdowns, in 2004 and 2005.

19 As has been noted, the Ninth Circuit has found that a "combination of (1) a prison
20 law library's lack of Spanish-language legal materials, and (2) a petitioner's inability to obtain
21 translation assistance before the one-year deadline, could constitute extraordinary
22 circumstances."  Mendoza, supra, 449 F.3d at 1069.  The problem for petitioner, however, is that
23 given all of the impediments to timely filing which petitioner has labored to show, the fact of his
24 repeated timely filings of his state court habeas petitions fly in the face of any representation that

---

[7] There are some 17 names listed in roster in Exh. L.

his lack of understanding of English, lockdowns, difficulty in obtaining money to pay for assistance, etc., *caused* the untimeliness at issue herein.

To reiterate, petitioner, or someone on his behalf, i.e, evidently an inmate Obando, filed petitioner's first state supreme court habeas petition (7/16/03) before his conviction was even final (9/9/03). Following the denial of that petition (4/14/04), only fourteen days elapsed before petitioner's petition to the state superior court was filed (4/28/04). After that denial (5/21/04), it took petitioner little more than a week (6/1/04) to have his state appellate court petition on file. Subsequent to the denial of that petition (7/8/04), one month later, petitioner filed his second state supreme court petition (8/9/04). Once that petition was denied (7/13/05), petitioner had his federal petition filed within three weeks (8/3/05). Thus, notwithstanding the obstacles that petitioner has been at pains to set forth before this court, it is apparent by petitioner's demonstrated diligence in the filing of his state court petitions that these obstacles were not the cause of the untimely filing in this court. As the undersigned indicated at the hearing given petitioner's continuous diligence, it is only reasonable to find that petitioner was awaiting the decision by the state supreme court before filing his federal petition. For this reason, the court sought further briefing post-hearing on the question of whether petitioner could be entitled to equitable tolling during the period that his second petition was pending in the state supreme court since Pace, supra, had not yet been decided for most of that period and petitioner could not have known whether and on what basis the petition would be denied and because he did, in fact, otherwise exercise diligence in pursuing his claims.

Petitioner's counsel conceded finding no case directly on point after exhaustive research, although she points to authority for the proposition that equitable tolling is available in extraordinary circumstances where the prisoner exercised diligence, citing Lawrence v. Florida,__ U.S. __ ,127 S. Ct. 1079, 1085 (2007), and Pace itself (at 418, 125 S. Ct. 1807 & n. 8). Petitioner's Further Briefing (PFB), pp. 1-2.

\\\\\

1   Respondent's counsel, in supplemental briefing, states that she has also been
2   unable to find any published case speaking directly to the question of whether the lack of
3   existence of the rule of Pace at the time an untimely petition was pending in state court entitles a
4   petitioner to equitable tolling. Respondent's Supplemental Briefing (RSB), p. 2. However, in
5   addition to citing Pace, itself, as supporting respondent's position (as petitioner does for his own
6   position), respondent noted a recent unpublished decision[8] wherein the Ninth Circuit rejected a
7   claim for equitable tolling under Pace. In Harrison v. Campbell, No. 06-17163, 2007 WL
8   4038722 (9th Cir. Nov. 16, 2007) (unpub.)

> Harrison contends that he is entitled to equitable tolling because two extraordinary obstacles made it impossible for him to file his federal habeas petition within the time prescribed under the AEDPA: (1) the superior court's "unforeseeable" conclusion that his state petition was untimely, and (2) the "unforeseeable" application of Pace to California's flexible timeliness standard. We disagree. First, in Pace, the Supreme Court said that a party may file a "protective petition" in federal court within the AEDPA deadline in order to ensure against an unforeseeable state court determination that a state habeas petition, which would otherwise entitle the petitioner to statutory tolling, was untimely. Pace, 544 U.S. at 416-17. Second, Pace held that "time limits, no matter their form, are 'filing' conditions" and expressly discussed the application of this rule to a prior decision of the California Supreme Court. Id. at 413-14, 418. We therefore affirm the district court's denial of equitable tolling.

18   The undersigned has more than passing familiarity with the Harrison case as it was assigned to
19   the undersigned in district court. In the August 1, 2006 Findings and Recommendations (CIV-S-
20   05-1546), the undersigned refused to find that equitable tolling would apply to a "Pace[d]"
21   statutory tolling situation. However, the circumstances of Harrison were much different than
22   those in play here. The Harrison petitioner waited nearly a year after his conviction became final
23   for AEDPA purposes before filing his *first* state petition. The undersigned reasoned that it made
24   no sense to apply equitable tolling to a situation where the same argument was precluded for

---

[8] Unpublished Ninth Circuit cases may now be cited if the case was issued subsequent to January 1, 2007.

statutory tolling. Such a finding made perfect sense in light of Harrison's lack of diligence. As the discussion below makes clear, petitioner suffered from the opposite problem – that of too much diligence, i.e., the filing of a premature habeas petition with the California Supreme Court even before his conviction was final.

Here, petitioner's counsel notes, petitioner's pro se status in proceeding to this court. PFB, p. 3. The Ninth Circuit has recently:

> reaffirm[ed] the clear principle that, even though *pro se* status alone is not enough to warrant equitable tolling, it informs and colors the lens through which we view the filings, and whether these filings made sufficient allegations of diligence. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.1990) ("This court recognizes that it has a duty to ensure that pro se litigators do not lose their right to a hearing on the merits of their claim due to ignorance of technical procedural requirements.").

Roy v. Lampert, 465 F.3d 964, 970 (9th Cir. 2006).

Here, this court has more than mere allegations to support petitioner's diligence, the undisputed evidence of petitioner's state court habeas filings are lodged documents that are part of the record of this case. The Supreme Court decided Pace on April 27, 2005. Petitioner's second state supreme court habeas petition was filed on August 9, 2004, and denied as untimely/successive on July 13, 2005, less than three months after Pace issued. Petitioner filed his federal petition within three weeks thereafter, as previously noted, on August 3, 2005. The court recognizes that at the time this was a pro se petitioner who spoke only Spanish and had no access to legal materials translated from English. However, petitioner, due to his diligent efforts, evidently made contact with a bilingual inmate to assist him, securing the requisite funds for the services of the bilingual inmate, such that his filings preceded apace, as his initial state court habeas petition was filed in a timely fashion and each petition up the state court ladder was filed very soon after having been denied by the court below. Moreover, the federal pro se petition was filed very quickly following the state supreme court denial. The court finds in these unique circumstances – that is, in light of petitioner's demonstrated and consistent diligence – that it

would be inequitable for this court to task petitioner with the prescience and foreknowledge to be able to determine the basis on which his second state supreme court habeas would be denied and to foresee that a decision not yet rendered by the U.S. Supreme Court for most of the time his state supreme court petition was pending would have such a preclusive effect on his federal filing.  However, it is the conjunction of petitioner's diligence with the timing of the issuance of Pace that leads the court to this conclusion and other petitioners should in no way infer any entitlement to equitable tolling merely because of the application of Pace to their pre-Pace state court filings.  The court will find that this petitioner is entitled to equitable tolling and will recommend denial of respondent's motion to dismiss.

Accordingly, IT IS RECOMMENDED that respondent's motion to dismiss, filed on June 5, 2006, be denied, and respondent be directed to file an answer within thirty days of adoption of these findings and recommendations, should that occur.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 1/4/08

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
gonz1954.fr