IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALEJANDRO RANGEL GONZALEZ,

    Petitioner,               No. CIV S-05-1954 LKK GGH P

   vs.

DAVID L. RUNNELS,            <u>ORDER &</u>

    Respondent.           <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

I. <u>Introduction</u>

        Petitioner, proceeding with appointed counsel, has filed a petition pursuant to 28 U.S.C. §2254. Petitioner challenges his April 3, 2001, San Joaquin County jury trial conviction for three counts of attempted murder, with weapon enhancements found true and two counts of shooting at an occupied motor vehicle. The jury found that petitioner did not commit the acts with deliberation and premeditation. Petitioner was sentenced to a term of 35 years, 4 months. Amended Petition (AP), filed on March 6, 2006. Petitioner raises the following grounds for relief: 1) ineffective assistance of trial counsel; 2) failure to add jury instructions; 3) sufficiency of the evidence.[1] AP at 6-18.

---

[1] Claims 4, 5 and 6 of the original petition have been abandoned. AP at 19.

1

For the reasons set forth herein, an evidentiary hearing is ordered on one aspect of the ineffective assistance of counsel claim; the remaining claims should be denied.

II. <u>Anti-Terrorism and Effective Death Penalty Act (AEDPA)</u>

*Legal Standards*

The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. <u>Moore v. Calderon</u>, 108 F.3d 261, 263 (9th Cir. 1997).

In <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to' clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. <u>Id</u>. at 495, 117 S. Ct. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. <u>Williams (Terry)</u>, 529 U.S. at 407-08, 120 S.Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather,

that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S.Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S.Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

*Evidentiary Hearing Standards*

Federal courts may hold evidentiary hearings in habeas actions under certain prescribed conditions:

> (2) If the applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant can show that--
>
> (A) the claim relies on--
>
> (i) a new rule of constitutional law...; or

3

      (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

      (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

      The United States Supreme Court has interpreted the opening paragraph of 28 U.S.C. § 2254(e) to provide that where a petitioner has exercised diligence to "develop the factual bases" of his claims in state court, the requirements of § 2254(e)(2)(A) do not apply to his request for an evidentiary hearing. Williams v. Taylor, 529 U.S. 420, 435 (2000). In other words, a petitioner who has exercised such diligence will be taken out of the purview of section 2254(e)(2), or as the Ninth Circuit has sometimes termed it, subjected to the evidentiary standard in "pre-AEDPA" cases. Griffey v. Williams, 345 F.3d 1058 (9th Cir. 2003), vacated on other grounds as moot, 349 F.3d 1157 (9th Cir. 2003) (petitioner died); Williams, 529 U.S. at 430 (showing under § 2254(e)(2) "applies only to prisoners who have 'failed to develop the factual basis of a claim in state court proceedings.'").

      Accordingly, "[a] petitioner who avoids the reach of § 2254(e)(2) qualifies for an evidentiary hearing if the petitioner alleges facts, that if proven, would entitle him to relief and the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts." Griffey, 345 F.3d at 1065 (citing Jones v. Wood, 114 F.3d 1002, 1010, 1013 (9th Cir. 1997)). "In other words, petitioner must allege a colorable constitutional claim." Turner v. Calderon, 281 F.3d 851, 890 (9th Cir. 2002). Nevertheless, the court does not have to hold an evidentiary hearing when the record clearly refutes the collateral factual allegations raised by petitioner. Schiro v. Landrigan, __ U.S. __, 127 S. Ct. 1933, 1940 (2007). Moreover, Schriro also announced that in determining whether to grant an evidentiary hearing the federal court must apply the AEDPA deferential standards to legal and factual questions necessarily reached by the state courts. Id. Thus, for example, if the reasons for counsel actions were at issue, but under

deferential standards, the court could not find prejudice, no evidentiary hearing would be necessary.

III. Background

The opinion of the California Court of Appeal, Third Appellate District, contains a factual summary. After independently reviewing the record, the court finds this summary to be accurate and adopts it below.

> On Christmas afternoon 2000, Scott Fore and his family drove to Tracy on I-5. As Fore started to exit the highway, a red Chevy Baretta came up on his left side, and Fore noticed a shotgun sticking up and out of the passenger's window. The gun was lowered as the Baretta passed the Fore's car. Fore braked sharply, and the Baretta cut in front of him. Fore called CHP on his cell phone and followed the car, staying a distance behind.
>
> The Baretta was driven by defendant Mendoza, and [Petitioner] sat in the front passenger's seat. As they went down the street, Mendoza drove the car into the lane for oncoming traffic and next to a yellow Sentra. [Petitioner] fired a shot at the Sentra, breaking the rear passenger windows of the car, and hitting another vehicle as well. A young girl was sitting in the back seat of the Sentra. Although she was covered with shards of glass from the exploding windows, she was not hit or injured.[2]
>
> Mendoza continued driving at speeds of approximately 100 miles per hour, while he was chased for approximately three miles by pursuing patrol cars. Officers saw [Petitioner] holding a shotgun out of the window.
>
> Mendoza eventually stopped the car on the side of the road. [Petitioner] had a difficult time getting out of the car with the shotgun, and had to be ordered to drop the weapon.
>
> A Spanish-speaking officer, Officer Agraz, arrived at the scene to assist with the arrests. Defendants were smiling and giggling when they were apprehended. They had a difficult time following orders, and both appeared to be intoxicated. Their balance was poor and officers noticed the smell of alcohol.
>
> Officers placed defendants in patrol cars. [Petitioner], who was placed in Officer Agraz's car, was very obstreperous and had to be restrained. He yelled, "Fuck you, police," in English, and later said in Spanish, "It's a good day to kill." He also said, "I want to go to prison, and my life-my life isn't worth a shit."
>
> Officers searched the Baretta, and found a number of items, including a nearly empty bottle of tequila, four expended shotgun shells, and a bag of 29 unused shells. Officers retrieved the shotgun and found it to be loaded with live ammunition, including one round in the firing chamber. This could happen only

---

[2] There were a total of three people in the Sentra.

5

> if someone had "racked" the gun after it was fired at the Sentra.
>
> A criminalist testified that the gun had a normal trigger pull and could not be discharged without pulling the trigger. The expended shells on the floor of the Baretta matched those that were test fired from the gun.
>
> At trial, [Petitioner] testified he remembered the gun going off while he was holding it but testified that he was drunk at the time and remembered only bits and pieces surrounding the events. In closing argument, defense attorneys asserted that defendants did not have the requisite intent for the charged offenses, and suggested the incident was an accident.

California Court of Appeal Opinion at 3-5. <u>See</u> also 2003 WL 1383479 at 1-2.

IV. <u>Argument & Analysis</u>

    A. <u>Claim 1 - Ineffective Assistance of Counsel</u>

Petitioner contends that he received ineffective assistance of counsel when his trial attorney failed to obtain a Spanish speaking expert, failed to call a voluntary intoxication expert, failed to present a defense based on the effects of cocaine and marijuana and for advising petitioner to reject a plea offer. AP at 11-12.

    *Legal Standard*

The test for demonstrating ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052 (1984). First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. <u>Strickland</u>, 466 U.S. at 688, 104 S.Ct. at 2065. To this end, petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. <u>Id</u>. at 690, 104 S.Ct. at 2066. The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. <u>Id</u>. "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." <u>Hughes v. Borg</u>, 898 F.2d 695, 702 (9th Cir. 1990) (citing <u>Strickland</u> at 466 U.S. at 689, 104 S.Ct. at 2065).

Second, a petitioner must affirmatively prove prejudice. Strickland, 466 U.S. at 693, 104 S.Ct. at 2067. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

If petitioner fails to show the challenged action by counsel was prejudicial in that it affected the reliability of the trial process, the claim of ineffective assistance of counsel may be rejected without deciding if counsel's conduct was deficient. Strickland, 466 U.S. at 697, at 104 S.Ct at 2069.

Of course, the federal court does not make this determination *de novo* if the state courts have issued a decision on the matter of ineffective assistance; a state court's decision on them merits of ineffective assistance of counsel could not be rejected unless it was "unreasonable" as earlier defined.

*Spanish Speaking Expert*

Petitioner's first claim, that trial counsel failed to call an expert Spanish speaking witness to rebut petitioner's statement that, "it was a good day to kill," is unexhausted, and also utterly without merit.

A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations. Coleman v. Thompson, 501 U.S. 722, 731, 111 S.Ct. 2546 (1991). A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887 (1995).

\\\\\

1    Petitioner concedes that the factual basis for this claim was not litigated in state
2 court. AP at 4. Petitioner states that the court must determine if it was petitioner's fault for
3 failing to develop the factual basis of this claim and if petitioner was diligent in his efforts.
4 Traverse at 4-5. However, petitioner offers no explanation for his failure to litigate this claim in
5 state court when seeking state habeas relief. Petitioner merely states that he was diligent in
6 pursuing his other claims.

7    However, 28 U.S.C. § 2254(b)(2) permits the district courts to reach the merits of
8 unexhausted claims, if the ultimate result would be a denial. This claim should be denied on its
9 merits.

10    According to the Amended Petition, after petitioner's arrest, a Spanish speaking
11 officer, Agraz, heard the petitioner say in Spanish: "*es un buen dia para matar*." There is no
12 dispute that this phrase is correctly interpreted in English as : "it is a good day to kill," and it was
13 so interpreted at trial by the court interpreter. Petitioner states, however, that although he does
14 not remember saying this phrase, or any other, Amended Petition at 10, the officer *may have*
15 misunderstood, and the actually spoken phrase *may have been:* "*es un buen dia para matarme*," –
16 "it is a good day to commit suicide." While expert testimony may have been permitted if the
17 translation of a given phrase were in dispute, that is not the issue here. No expert testimony
18 would be permitted to contest the precise words heard and testified to by the officer – this is
19 simply a percipient fact for the jury to find. And, on this record the words were undisputed. The
20 expert's speculation that maybe the officer misheard the words because there are similarly
21 spoken, but substantively different Spanish phrases, is rank speculation. It would be just as easy
22 to speculate that the officer omitted a "non" [not] so that the phrase actually was "it is not a good
23 day to kill." Or perhaps there were other Spanish phrases similar enough to have possibly been
24 said. Trial counsel would not have been permitted to call a speculating expert, and can not have
25 been ineffective for failing to do what was inappropriate.
26 \\\\\

*Intoxication Expert*

Petitioner alleges ineffective assistance of trial counsel for failing to call an expert witness regarding the effect petitioner's alcohol consumption had on his ability to form the specific intent to commit attempted murder. AP at 11.

Petitioner emphasizes that during deliberations the jury provided the court with a written question, "how much alcohol would be consumed for a .194?" Clerk's Transcript (CT) at 268. The jury never received an answer and petitioner contends that if an expert had testified the jury would not have convicted him of attempted murder. Petitioner's trial counsel intended to call Dr. Hart regarding the effects of voluntary intoxication. Trial counsel informed the court of his intent to call Dr. Hart but stated he had not talked to Dr. Hart about the specifics of the case yet. Reporter's Transcript (RT) at 33-34. Dr. Hart was never called as a witness.

To succeed with a claim of voluntary intoxication, one must present evidence that he was legally unconscious. People v. Ochoa, 19 Cal. 4th 353, 423, 79 Cal. Rptr. 2d 408 (1998). Unconsciousness for this purpose need not mean that the actor lies still and unresponsive. Id. at 423-424, 79 Cal. Rptr. 2d 408. Instead, a person is deemed "unconscious" if he committed the act without being conscious thereof. Id. See also CALJIC 8.47 "If you find that a defendant, *while unconscious as a result of voluntary intoxication*...When a person voluntarily induces his own intoxication *to the point of unconsciousness*..." (emphasis added). Although unconsciousness does not require the incapacity to move or act, the given definition is somewhat of a tautology; however, other cases and authority define the level of lack of consciousness – and the level is very difficult to reach. One court has held that the level is that of an automaton. People v. Webber, 228 Cal. App. 3d 1146, 1163, 279 Cal. Rptr. 437 (1991).[3] In other cases, courts found insufficient evidence to support a sua sponte intoxication jury instruction when (1)

---

[3] "Automaton" is defined in this context as "a person or animal acting in an automatic or mechanical way." *Webster's New World Dictionary*, Third College Edition at 93. "Automatic" in its pertinent meaning is defined: "done without conscious thought or volition, as if mechanically, or from force of habit." Id.

9

the defendant had drunk some beer and whiskey and was "'pretty well plastered'" People v. Spencer, 60 Cal. 2d 64, 88, 31 Cal. Rptr. 782 (1963); (2) the defendant had been drinking for several hours, but was "only woozy and not completely 'blacked out'" People v. Simpson 192 Cal. App. 3d 1360, 1370, 237 Cal. Rptr. 910) (1987); (3) the defendant had been drinking before the crime; he appeared to be "'a little high'" at the time of the crime, and he testified he was "'pretty drunk,'" (People v. Cram (1970) 12 Cal. App. 3d 37, 42, 90 Cal. Rptr. 393 (1970)); and (4) the defendant had drunk a dozen beers and some wine and thought he was drunk, but knew what he was doing, People v. Gonzales (1970) 4 Cal. App. 3d 593, 607, 84 Cal. Rptr. 863 (1970).

The issue of how unconscious is unconscious is a critical one to the outcome. The court finds that impairment in thinking per se does not satisfy the standards of unconsciousness as that term is utilized in California law. Based on the above law, any impairment in thinking, or making judgments, or being able to intend an act, must be so severe as to render a person in the circumstances at issue unable to exhibit any significant ability in those areas. An "unconscious" person might have the ability to simply respond, more or less automatically, to stimuli, but from a cognitive standpoint, he does not have the ability to purposefully influence his own response.

While there is no doubt that petitioner was impaired by having used alcohol, petitioner points to no evidence in the record that he was automaton-like in his actions, and the record certainly bespeaks otherwise. While petitioner testified that he does not remember much of what occurred, the evidence does satisfy the "legally unconscious" standard. Petitioner recalls buying the additional bottle of tequila and holding the shotgun when it was fired. RT at 473-76. Also, when initially thwarted in their efforts to find a victim, the initial assault was broken off, and a new victim was found. Petitioner was trying to shoot at another car, but was unable to when that driver saw the shotgun, braked quickly and forced petitioner's car to pass. RT at 92-94. In other words, petitioner knew when he could "hit the mark," and when he could not. He refrained from shooting when he could not, which gives rise to the inference that he was sufficiently cognitive to shoot when he did. Although the criminal acts were acts of stupidity and

insensitivity fueled by intoxication, these are not the acts of persons who do not know what they are doing because of grossly excessive intoxication. The record refutes the need for an evidentiary hearing.

Petitioner simply makes a conclusory statement that Dr. Hart's testimony would have led to a not guilty verdict but provides no other information to support this assertion. Petitioner has failed to demonstrate how Dr. Hart's testimony would have aided petitioner under the standard described above. One can infer that trial counsel's decision not to call Dr. Hart was based on the facts of the case in that petitioner was not "legally unconscious," and Dr. Hart's testimony could not have helped. Certainly, petitioner has *still* presented the court with nothing from this expert thus far in this federal proceeding which would indicate that Dr. Hart has anything helpful to say (much less presented anything to the state courts on habeas review). And, petitioner, who holds any medical privilege, could have procured this evidence if it were indeed favorable to him. The undersigned will not hold an evidentiary hearing simply because petitioner hopes that something good for his side will happen at hearing. While the standards for evidentiary hearing are not high, something more than speculation must be presented to justify one. Plaintiff has not been diligent in presenting the facts related to his claim in state court, nor here in federal court; no colorable claim has been set forth.

Petitioner has not shown any prejudice that resulted in trial counsel's decision not to use this witness. As a result, this claim is denied.

*Effects of cocaine and marijuana*

Petitioner next alleges that trial counsel was ineffective for failing to present a defense that petitioner was under the influence of cocaine and marijuana, as well as alcohol, at the time of the shooting. AP at 12.

A tactical decision by counsel with which the defendant later disagrees is not a basis for a claim of ineffective assistance of counsel. Guam v. Santos, 741 F.2d 1167, 1169 (9th Cir. 1984). Where it is possible that the failure to present evidence was a "difficult but

thoughtful tactical decision," a reviewing court must presume that counsel's conduct was "within the range of competency." Harris v. Pulley, 885 F.2d 1354, 1368 (9th Cir. 1988).

Trial counsel's strategy was to portray petitioner as a good young man who prior to this incident had done nothing wrong. Trial counsel stated in closing arguments,

> "you have [petitioner] who's been in this country for about three years, hasn't had any contact with law enforcement, never been arrested, goes out, get's drunk, some he doesn't do routinely, drinks tequila, and involves himself in what could have potentially been tragic circumstances, absolutely devastating consequences could have happened from this incredibly stupid act."

RT at 557.

Trial counsel chose not to present evidence of petitioner's cocaine and marijuana use. Trial counsel risked damaging the image of petitioner that he had cultivated during the trial, and the court will not second guess this reasonable decision. In addition, petitioner makes no effort to explain how failing to present this evidence prejudiced him during trial. There is no merit to this claim.

*Plea Bargain*

Petitioner's final claim regarding ineffective assistance of counsel, concerns trial counsel's alleged advice to reject a plea bargain of sixteen years, instead advising petitioner he would get four to six years in prison if a jury convicted him. AP at 12.

Where a defendant contends that counsel's ineffective assistance caused him to reject a plea offer, the Ninth Circuit has held that this states a viable Sixth Amendment claim. Turner v. Calderon, 281 F.3d 851, 879-80 (9th Cir. 2002). To prevail on the claim, a defendant must first demonstrate a gross error on the part of counsel. Id. at 880. Erroneous advice regarding the consequences of a guilty plea is insufficient *per se* to establish ineffective assistance; Petitioner must establish a "'gross mischaracterization of the likely outcome' of a plea bargain 'combined with ... erroneous advice on the probable effects of going to trial.'" Sophanthavong v. Palmateer, 378 F.3d 859, 868 (9th Cir. 2004). As to prejudice, he must show that but for counsel's errors, there was a reasonable probability at the time of the offer that he

would have agreed to the offer rather than insisting on going to trial. Id. While "uncertainty is inherent in predicting court decisions," McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441 (1970), counsel is required to give the defendant the tools he needs to make an intelligent decision. Turner, 281 F.3d at 881.

The record does not indicate if the prosecution did or did not make this offer and the only evidence of this claim is petitioner's own declaration. The Superior Court of the State of California rejected this claim and concluded that petitioner had, "failed to set forth a prima facie case of ineffective assistance." No. TF030490A, slip op. at 1. Respondent states that petitioner does not specifically allege that trial counsel told him four to six years was his maximum exposure if convicted of all charges. Respondent theorizes that perhaps trial counsel told petitioner that if acquitted of the three attempted murder charges and found guilty of shooting at an occupied vehicle, petitioner would get four to six years in prison.[4] However, the facts are unclear and petitioner ultimately received a thirty-five (35) year sentence and this claim, if true, could lead to a finding of ineffective assistance of counsel.

The undersigned cannot determine this matter without an evidentiary hearing. The witnesses may be entirely credible; they may not have any credibility. Any finding will await a hearing of the witnesses and weighing their testimony with the record as a whole. Thus, an evidentiary hearing is ordered as set forth in the conclusion of this Order/Findings and Recommendations.

B. Claim 2 - Jury instructions

Petitioner contends that the trial court erred by refusing to instruct the jury that the discharge of the firearm could have been grossly negligent, not intentional, and that the prosecutor misstated the law regarding this charge. AP at 12, 14.

\\\\\

---

[4] Petitioner's trial strategy was to argue grossly negligent discharge of a firearm while intoxicated.

*Legal Standard*

A state criminal defendant does not have a constitutional right to an instruction on lesser related offenses that are not lesser included offenses under state law. Hopkins v. Reeves, 524 U.S. 88, 96-99, 118 S.Ct. 1895 (1998) ("Almost all States ... provide instructions only on those offenses that have been deemed to constitute lesser included offenses of the charged crime. We have never suggested that the Constitution requires anything more.") (citations omitted).

Petitioner's trial counsel requested the issuance of California Jury Instruction - Criminal (CALJIC) 9.03.3, regarding grossly negligent discharge of a firearm.[5] Trial counsel argued that this was petitioner's only defense at trial and maintained that the discharge of the shotgun was grossly negligent, not malicious. RT at 558-62. The trial court denied petitioner's request saying that grossly negligent discharge of a firearm, Cal. Penal 246.3, was a lesser related offense. RT at 522-23. The trial court stated that counsel could argue the lesser related [but not included] offense, even though the trial court would not instruct the jury on it. RT at 523.

The Court of Appeal reviewed this claim and held that petitioner's claim lacked merit. The Court of Appeal stated:

> In People v. Birks (1998) 19 Cal.4th 108, 77 Cal.Rptr.2d 848, 960 P.2d 1073, the California Supreme Court overruled People v. Geiger (1984) 35 Cal.3d 510, 199 Cal.Rptr. 45, 674 P.2d 1303 and held that trial courts cannot instruct juries on related, but not included, offenses without the prosecutor's consent. To permit otherwise would give "the defendant a superior trial right to seek and obtain conviction for a lesser uncharged offense whose elements the prosecution has neither pled nor sought to prove." ( People v. Birks, supra, 19 Cal.4th at pp. 112-113, 77 Cal.Rptr.2d 848, 960 P.2d 1073.)
>
> Defendants acknowledge this holding, but assert that the failure to instruct on the lesser related offense deprived them of the ability to present a defense, namely,

---

[5] CALJIC 9.03.3 states: Every person who willfully [and unlawfully] discharges a firearm in a grossly negligent manner which could result in injury or death to a person is guilty of a violation of Penal Code section 246.3 subdivision (a), a crime. In order to prove this crime, each of the following elements must be proved:
1. A person willfully [and unlawfully] discharged a firearm;
2. The person who discharged the firearm did so in a grossly negligent manner; and
3. The discharge of the firearm was done in a manner which could result in injury or death to a person.

14

that they had discharged a firearm with gross negligence but without the intent required for attempted murder or violations of section 246. Defendants' claim lacks merit.

First, to the extent that this claim might be perceived as an attempt to end run Birks, it cannot succeed. As one court noted in rejecting an identical contention, Birks determined that it is inappropriate to permit trial courts to modify the charging process by instructing on a related, but uncharged, offense ( People v. Martinez (2002) 95 Cal.App.4th 581, 586, 115 Cal.Rptr.2d 574), and we are bound by that decision ( Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455-456, 20 Cal.Rptr. 321, 369 P.2d 937).

Second, it is unclear that defendant's claim has any support in the law. Defendant's position is not novel: In most cases involving lesser related offenses, the defendant seeks to utilize the lesser offense to demonstrate his lack of intent for the greater, charged offense. (See, e.g., People v. Birks, supra, 19 Cal.4th at pp. 114-115, 77 Cal.Rptr.2d 848, 960 P.2d 1073.) Yet defendant has not cited a single case that would suggest the failure to instruct on a lesser related offense raises constitutional concerns by preventing the presentation of a defense. In fact, the United States Supreme Court has suggested the opposite. In Hopkins v. Reeves (1998) 524 U.S. 88 [141 L.Ed.2d 76], the court found that an instruction on a lesser related offense to be inappropriate, noting: "Almost all States ... provide instructions only on those offenses that have been deemed to constitute lesser included offenses of the charged crime. [Citation.] We have never suggested that the Constitution requires anything more." ( Hopkins v. Reeves, supra, 524 U.S. at pp. 96-97 [--- U.S. at p. ----, --- S.Ct. at p. ----141 L.Ed.2d at p. 85].)

Third, defendants cannot demonstrate that they were deprived of a defense in this case. The fact that defendants may have committed a different offense, and in their view should have been charged differently, did not affect their ability to mount a defense. In arguments to the jury, they used the lesser related offense as a means to illustrate the intent required for the charged offenses, and they vehemently argued that they did not possess that intent. [Petitioner] was partially successful in this effort, as evidenced by the jury's conclusion that he did not act with premeditation and deliberation. The conviction on the other offenses, however, demonstrates that the jury did not believe defendants' claims that their actions were not willful. Had the jury believed that to be the case, it would have acquitted defendants of the charged offenses. Instead, it convicted them. The fact that the jury was not persuaded does not mean that defendants were precluded from preventing their defense.

2003 WL 1383479 at 4.

Under state law, petitioner has no right to a lesser *related* offense charge and pursuant to Hopkins there is no constitutional right. While petitioner preferred to be charged with negligent discharge of a firearm as opposed to attempted murder, that decision rests with the prosecutor who in this case successfully proved attempted murder. As a result, this claim should

be denied.

Petitioner also contends that the prosecutor misstated the law regarding grossly negligent discharge of a firearm in front of the jury. AP at 14. Petitioner argues that the prosecutor mentioned the first two elements of the charge but neglected to state the third element, that the discharge of the firearm was done in a manner which could result in injury or death. Id.

Success on a claim of prosecutorial misconduct requires a showing that the conduct infected the trial with unfairness so as to make the resulting conviction a denial of due process. Greer v. Miller, 483 U.S. 756, 765, 107 S.Ct. 3102, 3109 (1987) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871 (1974)). The conduct must be examined to determine "whether, considered in the context of the entire trial, that conduct appears likely to have affected the jury's discharge of its duty to judge the evidence fairly." United States v. Simtob, 901 F.2d 799, 806 (9th Cir. 1990).

The Court of Appeal denied this claim and stated:

> [T]the misstatement did not create an atmosphere of unfairness, or otherwise involve deception or reprehensible tactics. The prosecutor's comments were directed to what was essentially a nonissue, namely, whether defendant's conduct violated another related, but uncharged, Penal Code provision. A misstatement on such a peripheral matter does not rise to the level of prosecutorial misconduct.

2003 WL 1383479 at 6.

Any error resulting from the prosecutor's statement was harmless and not so egregious to cause a denial of constitutional due process. Furthermore, the state court's determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Thus, this claim is also denied.

C. Claim 3 - Sufficiency of Evidence

Petitioner argues that there was insufficient evidence to support the three counts of attempted murder. AP at. 16.

\\\\\

\\\\\

16

*Legal Standard*

When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial, viewed in the light most favorable to the prosecution, no rational trier of fact could have found "the essential elements of the crime" proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979). Under Jackson, the court reviews the entire record when the sufficiency of the evidence is challenged on habeas. Adamson v. Ricketts, 758 F.2d 441, 448 n. 11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987). It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts." Jackson, 443 U.S. at 319, 99 S.Ct. at 2789. "The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could have reached the same conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).

If the trier of fact could draw conflicting inferences from the evidence, the court in its review will assign the inference that favors conviction. McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994). The fact that petitioner can construct from the evidence alternative scenarios at odds with the verdict does not mean that the evidence was insufficient, i.e., that no reasonable trier of fact could have found the conviction scenario beyond a reasonable doubt.

> In reviewing the sufficiency of the evidence supporting a conviction, we search the record to determine "whether a reasonable jury, after viewing the evidence in the light most favorable to the government, could have found the defendants guilty beyond a reasonable doubt of each essential element of the crime charged." United States v. Douglass, 780 F.2d 1472, 1476 (9th Cir. 1986). *The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict.* United States v. Fleishman, 684 F.2d 1329, 1340 (9th Cir.), cert. denied, 459 U.S. 1044, 103 S. Ct. 464, 74 L. Ed.2d 614 (1982); United States v. Federico, 658 F.2d 1337, 1343 (9th Cir. 1981), overruled on other grounds, United States v. De Bright, 730 F.2d 1255, 1259 (9th Cir. 1984) (en banc).

United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991)(emphasis added).

1         Superimposed on these already stringent insufficiency standards is the AEDPA requirement that even if a federal court were to initially find on its own that no reasonable jury should have arrived at its conclusion, the federal court must also determine that the state appellate court not have affirmed the verdict under the <u>Jackson</u> standard in the absence of an unreasonable determination. <u>Juan H. v. Allen</u>, 408 F.3d 1262 (9th Cir. 2005).

        Petitioner argues that the evidence presented at trial was not sufficient to show that petitioner intended to inflict a fatal wound with the shotgun blast. AP at 18. Petitioner attempts to discredit statements admitted at trial and points to alcohol intoxication to negate the intent of attempted murder. In denying this claim, the Court of Appeal described the evidence presented at trial.

> Attempted murder requires a specific intent to kill. It cannot be presumed from the commission of another crime but must be affirmatively proved by direct evidence or solid inference. (<u>People v. Chinchilla</u> (1997) 52 Cal.App.4th 683, 690, 60 Cal.Rptr.2d 761; <u>People v. Belton</u> (1980) 105 Cal.App.3d 376, 380-381, 164 Cal.Rptr. 340.)
>
> A defendant's intent is rarely proved through direct evidence. "One who intentionally attempts to kill another does not often declare his state of mind either before, at or after the moment he shoots. Absent such direct evidence, the intent obviously must be derived from all the circumstances of the attempt, including the putative killer's actions and words. Whether a defendant possessed the requisite intent to kill is, of course, a question for the trier of fact. While reasonable minds may differ on the resolution of that issue, our sole function is to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (<u>People v. Lashley</u> (1991) 1 Cal.App.4th 938, 945-946, 2 Cal.Rptr.2d 629.)
>
> Sufficient evidence of intent to kill was introduced in this case. Defendants drove their car into oncoming traffic in order to drive alongside the Sentra. [Petitioner] pointed his shotgun out of the window and fired, shooting out the windows in the back of the victim's car. A criminalist testified that the gun had a normal trigger pull and could not be fired accidentally. [Petitioner] told one of the arresting officers that "it[ was] a good day to kill." Given these acts and statements, a jury could reasonably conclude that defendants possessed an intent to kill.

2003 WL 1383479 at 6.

        As he did before, petitioner argues that the responding Spanish speaking police officer could have misheard what petitioner stated. Instead of stating, "*Es un buen dia para*

18

*matar*" (which translates to, "It is a good day to kill"), petitioner argues he could have said, *"Es un buen dia para matarme"* (which according to petitioner translates to "It is a good day to commit suicide").⁶ This claim of speculated mishearing has no more merit here than it did with the expert.

Again, petitioner's car passed into oncoming traffic to pass the victims' car and a reasonable jury could find that it was not a coincidence that petitioner's shotgun happened to discharge right at the moment when the cars were side by side and just happen to be aimed at the victims. As stated previously, there was evidence that petitioner was trying to shoot at another car, but was unable to when that driver saw the shotgun, braked quickly and forced petitioner's car to pass. RT at 92-94. In other words, petitioner knew when he could "hit the mark," and when he could not. He refrained from shooting when he could not, which gives rise to the inference that he was intending to shoot when he did.

Petitioner also alleges, seemingly as an aside, that there was not sufficient evidence for the jury to find the intent to commit attempted murder due to petitioner's intoxication.⁷ However, evidence was presented to the jury concerning petitioner's inebriated state. RT 371, 375, 455-61, 465-66, 469-74, 480-86. Petitioner has cited no authority to support this claim and the court already analyzed a voluntary intoxication defense above and found it lacked merit. Petitioner has failed to show that the jury was unreasonable in finding him guilty due to intoxication or that the state court holding was an unreasonable application of established Supreme Court authority.

Thus, there is no merit to petitioner's claims that there was insufficient evidence to find him guilty and this claim should be denied.

---

⁶ The Spanish speaking officer testified that she was 100% sure petitioner stated, "It was a good to kill." RT at 425-26.

⁷ The intoxication argument is not a separate claim rather part of the sufficiency of evidence claim.

19

1    IT IS HEREBY ORDERED that an evidentiary hearing regarding petitioner's claim that trial counsel advised him to reject a plea offer is scheduled for June 22, 2009, at 9:00 a.m., before the undersigned.

IT IS HEREBY RECOMMENDED that petitioner's remaining claims for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: 03/17/09

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

ggh:ab
gonz1954.hc